IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD DICKMAN, KENT ALDERSON, LESLEY S. RICH, *trustee* *for* RICHARD S. WALLBERG INSURANCE TRUST, *individually and on behalf of all those similarly situated*, | * <br> * <br> * | |
| Plaintiffs, | * | Civil Action Nos. RDB-16-0192 |
| v. | * | GLR-17-2026 |
| BANNER LIFE INSURANCE COMPANY, WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, | * <br> * <br> * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This case features two consolidated class action claims against life insurance companies for misrepresentations and unjustified cost increases related to their universal life policies. (Final Approval Ord. 1–2, ECF No. 361.) *See Dickman v. Banner Life* (*Banner*), No. RDB-16-192 (D. Md. filed Jan. 19, 2016); *Rich v. William Penn Life Ins. Co.* (*Penn*), No. GLR-17-2026 (D. Md. filed July 20, 2017). On May 20, 2020, following extensive litigation and discovery, this Court approved a classwide settlement of approximately $40 million in damages, $7,851,011.68 in attorneys' fees, and $1,023,172.20 in expenses. (Final Approval Ord. ¶¶ 10, 15; *see* Settlement Ag't, ECF No. 250-3.) A single class member objected to this settlement, and the United States Court of Appeals for the Fourth Circuit denied that objection and affirmed. *See 1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 517–18 (4th Cir. 2022).

With the settlement affirmed and the award finalized, the only remaining issue is the allocation of the $7,851,011.68 fee award between the firms that served as plaintiffs' counsel. Prior to the onset of this litigation, the parties entered a fee-splitting agreement (the "Letter Agreement") allocating fees as follows: (1) 35.8% to Beasley-Allen, Crow, Methvin, Portis & Miles P.C. ("Beasley Allen"); (2) 35.8% to Geoff McDonald & Associates, P.C. ("McDonald"); (3) 23.4% to The Finley Firm, P.C. ("Finley"); and (4) 5% to Paulson & Nace, PLLC ("Nace"). (Letter Ag't, ECF No. 354-1.) However, by the time this case settled, and the parties requested an award of attorneys' fees, it became apparent that the contributions of the four firms varied significantly from their initial projections. (*See* Beasley Allen Obj. R&R 7, ECF No. 376.) Further complicating matters, an attorney appointed to serve as lead counsel, George W. "Wally" Walker, departed Finley and associated with another firm that is not counsel of record in this case. (*See* Decl. of George W. "Wally" Walker ("Walker Decl.") ¶ 2, ECF No. 378-1.) In light of these events, the firms now dispute whether the Letter Agreement is enforceable and how the fee award should be allocated.

On May 29, 2020, this Court appointed the Honorable Frederic N. Smalkin, the retired former Chief Judge of this Court, to serve as a Special Master and resolve the fee dispute. (Ord. Appointing Special Master, ECF No. 366.) Judge Smalkin issued his Report and Recommendations on November 17, 2020. (ECF No. 375). In this Report, the Special Master recommends that this Court allocate fees in accordance with the Letter Agreement, after first paying Walker out of the general fund to account for any work that he completed on this litigation following his departure from the Finley Firm. (Report & Recommendations ("R&R")

11, 13–17, ECF No. 375.) Now pending are several motions addressing the Special Master's Report and Recommendations:

- The Finley Firm's Motion to Adopt the Report and Recommendations of the Special Master (ECF No. 377);

- Geoffrey R. McDonald & Associates, P.C.'s Motion to Adopt the Report and Recommendations of the Special Master (ECF No. 379);

- Beasley Allen's Objection to the Special Master's Report and Recommendations (ECF No. 376);

- George W. Walker and Boles Holmes Parkman White, LLC's Motion to Modify and Clarify the Report and Recommendations of the Special Master (ECF No. 378); and

- Co-Lead Counsel's Notice of Allocation of Attorneys' Fees (ECF No. 406).

The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021).

For the reasons that follow, the Motions to Adopt the Special Master's Report (ECF Nos. 377, 379) are hereby **GRANTED;** the Objection to the Special Master's Report (ECF No. 376) is hereby **DENIED;** the alternative Notice of Allocation of Attorneys' Fees (ECF No. 406) is hereby **DENIED;** and the Motion to Modify Report and Recommendations of the Special Master (ECF No. 378) is hereby **GRANTED** in part and **DENIED** in part. Specifically, the Motion to Modify is granted with respect to three of the four proposed modifications. It is denied with respect to the proposed modification that would change the deadline recommended by Judge Smalkin for the submission of documents. The $7,851,011.68 fee award in this case shall be allocated in accordance with the Special Master's Report and Recommendations, subject to limited modifications.

## BACKGROUND

This years-long fee dispute arises from two putative class actions against life insurance companies, alleging that the Defendant companies misrepresented the performance of their universal life policies and fraudulently increased their cost-of-insurance charges to a class of policyholders. (Final Approval Ord. 1–2.) *See Dickman v. Banner Life* (*Banner*), No. RDB-16-192 (D. Md. filed Jan. 19, 2016); *Rich v. William Penn Life Insurance Co.* (*Penn*), No. GLR-17-2026 (D. Md. filed July 20, 2017). Following four years of protracted litigation, the parties reached a settlement in principle in June 2019, (Status R., ECF No. 241), and the *Banner* and *Penn* cases were consolidated for settlement purposes, (Consolidation Ord., ECF No. 245). At a final fairness hearing on May 20, 2020 (ECF No. 367), this Court approved a settlement of roughly $40 million in damages, $7,851,011.68 in attorneys' fees, and $1,023,172.20 in litigation expenses. (Final Approval Ord. ¶¶ 10, 15; Settlement Ag't, ECF No. 250-3.)[1] A single class member objected to this settlement, and the United States Court of Appeals for the Fourth Circuit denied that objection and affirmed. *See 1988 Tr. for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 517–18 (4th Cir. 2022).

Four firms represented the plaintiffs in these consolidated cases: (1) Beasley-Allen, Crow, Methvin, Portis & Miles P.C. ("Beasley Allen"); (2) Geoff McDonald & Associates, P.C. ("McDonald"); (3) The Finley Firm, P.C. ("Finley"); and (4) Paulson & Nace, PLLC ("Nace"). At the outset of *Banner*, in 2016, the parties signed a Letter Agreement providing for an allocation of fees and responsibilities among these firms. (*See* Letter Ag't, ECF No. 354-1.)

---

[1] Classwide benefits were divided approximately 2:1 between *Banner* and *Penn*, with $26.9 million in damages attributed to the *Banner* class, and $13.7 million in damages attributed to the *Penn* class. (Decl. of W. Daniel "Dee" Miles III ("Miles Decl.") ¶ 23, ECF No. 376-2.)

This agreement provided that all litigation costs would be split equally between Beasley Allen and McDonald, and that any attorneys' fees awarded in *Banner* would be allocated at the following rates: (1) 23.4% to Finley; (2) 35.8% to Beasley Allen; (3) 35.8% to McDonald; and (4) 5% to Nace. (*Id.* at 1–2.) The Agreement provided that these percentages represented the parties' good-faith efforts to forecast, "as accurately as possible, the fair and reasonable value of client acquisition and services rendered and to be rendered in the above-referenced matter by each of the parties hereto." (*Id.* at 2.)

Early in the litigation, this Court appointed W. Daniel "Dee" Miles ("Miles") of Beasley Allen and George W. "Wally" Walker ("Walker") of the Finley Firm to serve as Interim Class Counsel. (*See* Ord. Granting Pls.' Mot. to Appoint Interim Class Counsel ("Lead Counsel Ord."), ECF No. 74.)[2] Interim Class Counsel were made responsible for "performing work to advance the litigation for the common benefit of all plaintiffs," and charged with several responsibilities intended to further the interests of the plaintiff class and coordinate the work of plaintiffs' counsel. (*Id.* at 2–4.) Their case-management responsibilities included assigning work to plaintiffs' counsel, encouraging cooperation and efficiency among plaintiffs' counsel, and monitoring the activities of plaintiffs' counsel. (*Id.* at 3.) Additionally, lead counsel were granted authority to "[r]equest that the Court approve any proposed settlement and fee petition, and allocate those fees among Plaintiffs' counsel." (*Id.* at 4.)

---

[2] By this same order, this Court appointed Christopher T. Nace of Paulson & Nace, PLLC to serve as Liaison Counsel. (*Id.* at 2.) The record reflects that Paulson & Nace served as local counsel in this action. Accordingly, the Nace firm was allocated only 5% of the resulting fee award in the Letter Agreement. Nace appears to take no stance on any of the Special Master's findings, and has not joined in or objected to any of the pending motions.

Complicating matters, one of the attorneys designated Interim Class Counsel changed his employment before the approval of the final settlement. For health reasons unrelated to this litigation, Walker departed Finley on November 30, 2019, and joined Boles Holms Parkman White, LLC ("Boles") on December 2, 2019. (*See* Decl. of George W. "Wally" Walker ("Walker Decl.") ¶ 2, ECF No. 378-1; Suppl. Decl. of George W. "Wally" Walker ¶ 14, ECF No. 378-2.) Nevertheless, Walker remained Interim Class Counsel and continued to fulfill the responsibilities of this position. In collaboration with Miles, he "continued to take all necessary steps to provide notice to class members, respond to class member inquiries, receive notices of exclusions, respond to the Objector, and obtain final Court approval of the Settlement." (Beasley Allen Obj. 5.) He also entered an appearance in the Fourth Circuit to defend the Settlement against the objector's appeal. (Miles Decl. ¶ 25.)

Ultimately, things did not work out as the parties anticipated. After years of discovery and litigation, the work that the parties completed by the end of the case did not align with the division of labor that they forecast at the outset. According to Beasley Allen and Walker, Interim Class Counsel took the lead on discovery and summary judgment practice, handled motions to compel and evidentiary objections, and led mediation and settlement discussions. (Beasley Allen Obj. 8; *see* BA *Banner* Case Expenses, ECF No. 376-5; Miles Billable Hours, ECF No. 376-6.) The evidence submitted in support of the general fee award indicates that "Beasley Allen accounted for 62.58% of the total hours worked in the case with 5,004.20 hours; Walker and his paralegal Amy Adams accounted for 16.15% with 1,291.7 hours; [McDonald] accounted for 12.9% with 1,031.8 hours; and Finley accounted for 8.19% of the hours with 655.20 hours." (Beasley Allen Obj. 7 (citing Mem. Supp. Mot. Att'y Fees 17–18,

ECF No. 293-1); *see also* Miles Fees Decl. ¶¶ 6–9, ECF No. 293-2; Walker Fees Decl. ¶¶ 4–7,

ECF No. 293-3; Gibson Fees Decl. ¶¶ 4–11, ECF No. 293-4; Nace Fees Decl. ¶¶ 7–11, ECF

No. 293-5; McDonald Fees Decl. ¶¶ 4–10, 293-6.)

Consequently, as the settlement in this case approached final approval, a dispute

emerged regarding the proper division of attorneys' fees. Shortly before the Final Fairness

Hearing, Beasley Allen requested the appointment of a Special Master to determine the proper

fee allocation in this case. (*See* Mot. Appoint Special Master, ECF No. 348.) *See also Reed v.*

*Cleveland Bd. of Ed.*, 607 F.2d 737, 747 (6th Cir. 1979) ("The use of masters is permitted because

they improve the judicial process by bringing to the court skills and experience which courts

frequently lack."). On May 29, 2020, only nine days after the Final Fairness Hearing, this Court

appointed Judge Smalkin, the retired former Chief Judge of this Court, to serve in this role.

(Ord. Appointing Special Master.) Judge Smalkin issued his Report and Recommendations on

November 17, 2020 (ECF No. 375). In this Report, he concluded that the Letter Agreement

is valid and enforceable under Maryland law and recommended that this Court allocate fees in

accordance with that agreement after first paying Walker out of the general fund to account

for any work that he completed during his employment with Boles. (R&R 11, 13–17.)

Following the release of these recommendations, the interested firms have divided into

two opposing camps. McDonald and Finley move to adopt these recommendations outright.

(Finley Mot. Adopt R&R, ECF No. 377; McDonald Mot. Adopt R&R, ECF No. 379.) Beasley

Allen and Walker object to the Special Master's recommendations, (Beasley Allen Obj. R&R,

ECF No. 376), and have since proposed an alternative fee allocation, (Co-Lead Counsel Notice

of Allocation, ECF No. 406.) Alternatively, in the event the recommendations are adopted,

Walker requests four procedural modifications regarding the handling of funds and the distribution of the award. (Walker Mot. Modify R&R, ECF No. 378.) The parties have filed opposition papers to each motion and exhaustively briefed the relevant issues.

All of these motions are now pending.

## STANDARD OF REVIEW

The Special Master's legal conclusions are reviewed *de novo*, Fed. R. Civ. P. 53(f)(4), while his procedural rulings are reviewed for an abuse of discretion, Fed. R. Civ. P. 53(f)(5). Comparatively, the Special Master's factual findings are reviewed de novo, "unless the parties, with the court's approval, stipulate that: (A) the findings will be reviewed for clear error; or (B) the [Special Master's] findings . . . will be final." Fed. R. Civ. P. 53(f)(3). In its order appointing Judge Smalkin to serve as Special Master, this Court stipulated that "[his] findings will be reviewed for clear error and this Court's final review shall not be subject to review by the United States Court of Appeals for the Fourth Circuit." (Ord. Appointing Special Master ¶ 6.) Accordingly, the Special Master's factual findings shall be reviewed for clear error in this case. *See* Fed. R. Civ. P. 53(f)(3)(A).

## ANALYSIS

The merits of this case were resolved three years ago. As discussed above, this Court has approved a consolidated class action settlement addressing the *Banner* and *Penn* litigation. (Final Approval Ord. ¶ 15.) That settlement awards the plaintiff classes roughly $40 million in compensatory damages and nonmonetary benefits. *1988 Tr. for Allen Children*, 28 F.4th at 517. It also includes an award of $7,851,011.68 in attorneys' fees and $1,023,172.20 in litigation expenses to be allocated and divided among plaintiffs' counsel. (Final Approval Ord. ¶ 15.)

No parties dispute the amounts of these awards, and the only objection to this settlement has been denied on appeal by the United States Court of Appeals for the Fourth Circuit. *See 1988 Tr. for Allen Children*, 28 F.4th at 517–18 ("[T]he district court did not abuse its discretion either in certifying the class or approving the settlement.").

Only one question remains in the twilight of this long-running dispute: How the uncontested award of attorneys' fees should be allocated among the attorneys and law firms that participated in this litigation. On May 29, 2020, at the request of Beasley Allen, this Court appointed Judge Smalkin to determine the appropriate fee allocation in this case. (*See* Mot. Appoint Special Master 1; Ord. Appointing Special Master ¶¶ 1–4.) Following extensive briefing by all interested parties, Judge Smalkin found, as summarized below, that:

    (1) The Letter Agreement is lawful and enforceable under Maryland law, as it was signed in good faith by sophisticated parties, it does not tie the percentages of the award to the proportions of the work performed, and the equities do not render it unenforceable;

    (2) Walker is not an interested party in the Letter Agreement, and is not entitled to personally receive a percentage of the fee award, as he signed the Agreement as a representative of the Finley Firm; and

    (3) As Walker left the Finley Firm prior to the conclusion of this Case but continued to work as Lead Counsel, any work performed by Walker after his separation from Finley should be deducted from the general fee fund before the fund is distributed in accordance with the Letter Agreement.

(R&R 11, 13–17.) Accordingly, the Special Master recommends that this Court compensate Walker directly for any work done on this case for the Boles firm, and then distribute the remainder of the fee award in accordance with the 2016 Letter Agreement. (*Id.* at 16–17.)[3]

---

[3] Throughout their submissions, Beasley Allen and Walker insist that the Special Master failed to actually recommend a fee allocation or to opine as to whether the Fee Agreement is reasonable. (*See, e.g.*, Beasley Allen Obj. 2–3; Walker Mot. Modify ¶¶ 5–7; Beasley Allen Repl. Supp. Obj. to R&R

The interested attorneys take competing positions on this result. McDonald and Finley have moved to adopt the Special Master's Report and Recommendations without alteration, and to divide the fee award in accordance with the 2016 Letter Agreement. (*See* McDonald Mot. Adopt R&R 1; Finley Mot. Adopt R&R 1.) This agreement would yield an award of 35.8% to Beasley Allen; 35.8% to McDonald; 23.4% to the Finley Firm; and 5% to Paulson & Nace, following any individual distribution to Walker from the general fund. (R&R 4–5; Letter Ag't 1–2.) Beasley Allen and Walker object to the Special Master's recommendations and offer an alternative allocation in their capacity as Lead Counsel. (*See* Beasley Allen Obj. 6; Walker Repl. Supp. 3 n.5; Notice of Allocation 3; Proposed Fee Allocation Structure, ECF No. 410.) This proposal would result in an award of 54.62% to Beasley Allen; 18.27% to Walker; 11.56% to McDonald; and 5% to Paulson & Nace. (*See* Co-Lead Counsel Notice of Allocation 3–4.) Finally, and in the alternative, Walker seeks four modifications that would clarify the procedure for the distribution of funds and preserve his right to pursue independent relief against Finley. (Walker Mot. Modify ¶¶ 15–18.)

## I.   Enforceability of the Fee Agreement

The central issue before this Court is the enforceability of the 2016 Letter Agreement, and the proper allocation of attorneys' fees.[4] The Rules of Professional Conduct place ethical

---

3, ECF No. 389; Walker Repl. Supp. Mot. Modify 2–3, ECF No. 390.) Although the Special Master did not explicitly outline percentages that should be awarded, he concluded that the Letter Agreement is enforceable and binding, and that the allocation it mandates was a reasonable forecast of the parties' relative contributions at the outset of this litigation. (*See* R&R 13–15.) That is more than sufficient for this Court to connect the dots and propose a corresponding allocation.

[4] The award of $1,023,172.20 in litigation expenses is uncontested, and the distribution of these funds was mandated by this Court's order appointing the Special Master. (*See* Appointment Ord. ¶ 16 ("This Court DIRECTS Beasley Allen, upon receipt of the $1,023,172.20 in litigation costs and expenses advanced by the parties, as contemplated by the Final Approval Order . . . and all of which

limits on attorneys' fees—including the amount that may be collected, the manner in which they must be communicated to the client, and the circumstances in which they may be divided and shared. *See* ABA Model Rules of Pro. Conduct r. 1.5 (Am. Bar Ass'n 2020). At issue here is Rule 1.5(e) of the Maryland Rules of Professional Conduct ("MRPC"), which provides that "[a] division of a fee between lawyers who are not in the same firm may be made only if:"

> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
>
> (2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
>
> (3) the total fee is reasonable.

MRPC Rule 1.5(e);[5] *see also McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters*, 494 N.W.2d 826, 828 (Mich. Ct. App. 1992), *appeal denied,* 503 N.W.2d 446 (Mich. 1993) (observing that Rule 1.5(e) "is designed to prohibit brokering, to protect a client from clandestine payment and employment, and to prohibit aggrandizement of fees.").

Beasley Allen objects to the Special Master's recommendations on the grounds that the Letter Agreement violates Rule 1.5(e), as the prearranged allocation of fees is disproportionate to the services that each firm provided in this case.[6] Specifically, Beasley Allen notes that the

---

are uncontested, to be immediately distributed to Beasley Allen, [McDonald], the Finley Firm, and Paulson & Nace in the amounts incurred by each of these law firms.").)

[5] As with most attorney ethical rules governing the practice of law, the Maryland Rules of Professional Conduct govern the practice of law in this court. *See* Local Rule 704 ("This Court shall apply the Rules of Professional Conduct as they have been adopted by the Maryland Court of Appeals.").

[6] In its initial Objection, Beasley Allen goes further, arguing that the Letter Agreement should be read as requiring firms to contribute the requisite percentage of services as a condition precedent. (Beasley Allen Obj. 14 ("The only reasonable interpretation of the [Letter] Agreement's provision regarding the percentage of services to be rendered is that each firm was required to contribute services in *Banner* in approximately the same percentage as their fee percentage.").) This argument fails. As

Agreement allocates only 35.8% of the award to Beasley, which performed as much as 62.58% of the work on this case by hours, and an equivalent 35.8% to McDonald, which performed approximately 12.90% of the work by hours. (Beasley Allen Obj. 2–3, 7.) The key issue in this case is whether this disparity—between the fees allocated to each firm and the work they ultimately completed—renders the Letter Agreement unenforceable.

The firms draw on authority from around the country to support their positions. However, jurisdictions are divided as to whether Rule 1.5(e) may be enforced as a defense to a pre-existing fee agreement.[7] Several courts have held that any fee agreement that fails to meet the requirements of Rule 1.5(e) violates public policy and is unenforceable as a matter of law. *See* Restatement (Third) of the Law Governing Lawyers § 47 cmt.i; *accord Padden L. Firm, PLLC v. Toyota Motor Corp.*, 956 F.3d 1069, 1075 (8th Cir. 2020) (calling this the "majority view" (citation omitted)); *see, e.g., Christensen v. Eggen*, 577 N.W.2d 221, 224–25 (Minn. 1998); *In re Estate of Katchatag*, 907 P.2d 458, 463–65 (Alaska 1995). Some courts have relaxed this requirement, reasoning that the fee agreement need not precisely correspond to the work each attorney performed. *See, e.g., Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 824 (6th Cir. 1990) ("[W]here the trial court finds a substantial division of services or responsibility, the agreed division should control." (quoting *McNeary v. Am. Cyanamid Co.*, 712 P.2d 845, 848 (1986) (en

---

discussed herein, compliance with Rule 1.5(e) is treated as an equitable defense to enforcement, not a prerequisite for the performance of a fee split agreement.

[7] The parties heavily prioritize out-of-state authority to carve out their positions on this issue but spend little time contrasting the competing positions taken by the jurisdictions they cite. The most prominent approaches to this issue are reviewed here for clarity. Older decisions summarizing the divergent viewpoints of the states on this issue include *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 178 F. Supp. 2d 9, 13–17 (D. Mass. 2001) and *Dragelevich v. Kohn, Milstein, Cohen & Hausfeld*, 755 F. Supp. 189, 192 (N.D. Ohio 1990).

banc)) (applying Pennsylvania law); *Fitzgibbon v. Carey*, 688 P.2d 1367, 1374 (Or. Ct. App. 1984) ("[W]e are not persuaded that [the rule] was intended to require associating attorneys to correlate each minute spent on a case to each penny earned therefrom in order to achieve proportionality . . . ."); *Breckler v. Thaler*, 87 Cal. App. 3d 189, 196–97 (1978).

On the other end of the spectrum, several jurisdictions take the position that Rule 1.5(e) is a purely ethical requirement that does not carry the force of law and provides no defense to enforcement. *See, e.g.*, *Freeman v. Mayer*, 95 F.3d 569, 575–76 (7th Cir. 1996) (applying Indiana law); *Poole v. Prince*, 61 So. 3d 258, 281 (Ala. 2010) ("[T]he sole remedy for a violation of Rule 1.5(e) is disciplinary in nature."); *Potter v. Peirce*, 688 A.2d 894, 896–97 (Del. 1997) ("[A] Delaware lawyer's violation of a disciplinary rule may not be interposed as a shield to avoid a contractual duty."). Between these extremes, many states strike a middle ground, holding that a prearranged fee split may be enforced as long as the attorneys have substantially contributed to the representation. *See, e.g.*, *Benjamin v. Koeppel*, 650 N.E.2d 829, 832 (N.Y. 1995); *McNeary*, 712 P.2d at 848; *Schniederjon v. Krupa*, 474 N.E.2d 805, 809 (Ill. Ct. App. 1985); *accord Nickerson v. Holloway*, 469 S.E.2d 209, 210 (Ga. Ct. App. 1996) ("[A]s long as both attorneys have done some work on the case beyond signing and referring the client, the courts will not engage in the cumbersome task of evaluating after the fact the relative contributions made by the bickering attorneys.").

The Court of Appeals of Maryland[8] has held that Rule 1.5(e) "constitutes an expression of public policy having the force of law," and an equitable defense to contract enforcement.

---

[8] Following a ballot measure passed in November 2022, the Court of Appeals of Maryland has been renamed the Supreme Court of Maryland. As the cases referenced in this opinion predate this ballot measure, the high court shall be referred to by its contemporaneous name throughout.

*Post v. Bregman*, 707 A.2d 806, 816 (1998); *accord Somuah v. Flachs*, 721 A.2d 680, 685 (Md. 1998);

*Brault Graham, LLC v. Law Offices of Peter Angelos, PC*, 66 A.3d 71, 92 n.9 (Md. Ct. Spec. App.

2013); *Goldman, Skeen & Wadler, P.A. v. Cooper, Beckman & Tuerk, LLP*, 712 A.2d 1, 6–9 (Md.

Ct. Spec. App. 1998). In *Post v. Bregman*, 707 A.2d 806 (Md. 1998), the plaintiff attorney

challenged his fee shifting agreement with a referring attorney, arguing that the agreement did

not allocate fees in proportion to the services they provided. 707 A.2d at 808–10. The plaintiff

attorney argued that "the Rule constituted a statement of supervening public policy and that

the agreement was unenforceable because it was a violation of that public policy," *id.* at 815,

and the referring attorney countered that MRPC 1.5(e) is an ethical rule that is only enforceable

through attorney disciplinary proceedings, *id.* at 812–13. The circuit court granted summary

judgment to the referring attorney, the Court of Special Appeals affirmed, and the plaintiff

appealed. *Id.* at 813.

Canvassing the divergent approaches to this issue, the Court of Appeals noted that the

Rules of Professional Conduct "serve to regulate virtually every aspect of the practice of law,

. . . the integrity of which is vital to nearly every other institution and endeavor of our society."

*Id.* at 816. In light of their importance, the Court concluded that the Rules constitute "a

supervening statement of public policy" that carries the force of law, and that "fee-sharing

agreements in clear and flagrant violation of Rule 1.5(e)" may be unenforceable. *Id.* at 818.

Nevertheless, the Court reasoned that "the Rule is not a *per se* defense, rendering invalid or

unenforceable otherwise valid fee-sharing agreements because of rule violations that are

merely technical, incidental, or insubstantial or when it would be manifestly unfair and

inequitable not to enforce the agreement." *Id.* at 819. Rather, a violation of Rule 1.5(e) should

be regarded as "an equitable defense," subject to the following considerations:

> When presented with a defense resting on Rule 1.5(e), the court must look to
> all of the circumstances—whether the rule was, in fact, violated, and, if violated
> (1) the nature of the alleged violation, (2) how the violation came about, (3) the
> extent to which the parties acted in good faith, (4) whether the lawyer raising
> the defense is at least equally culpable as the lawyer against whom the defense
> is raised and whether the defense is being raised simply to escape an otherwise
> valid contractual obligation,6 (5) whether the violation has some particular
> public importance, such that there is a public interest in not enforcing the
> agreement, (6) whether the client, in particular, would be harmed by enforcing
> the agreement, and, in that regard, if the agreement is found to be so violative
> of the Rule as to be unenforceable, whether all or any part of the disputed
> amount should be returned to the client on the ground that, to that extent, the
> fee is unreasonable, and (7) any other relevant considerations.

*Post*, 707 A.2d at 819; *accord Goldman*, 712 A.2d at 8 ("*Post* clearly contemplates . . . that a defense

based on the MLRPC may not be available in every circumstance.").

Accordingly, an equitable defense relying on putative violations of MRPC 1.5(e)

requires a two-step analysis under Maryland law. *Sanders v. Mueller*, 133 F. App'x 37, 43–44 (4th

Cir. 2005); *see also Edell & Assocs., P.C. v. Law Offices of Peter Angelos*, 264 F.3d 424, 442 (4th Cir.

2001); *Brown & Sturm v. Frederick Road Ltd. P'ship*, 768 A.2d 62, 88–89 (Md. Ct. Spec. App.

2001). First, the court must evaluate the facts of the case and determine whether the agreement

is a "clear and flagrant" violation of MRPC 1.5(e). *Sanders*, 133 F. App'x at 44. Second, the

court must examine the seven non-exclusive factors outlined in *Post* to determine whether the

equities favor enforcing the contract. *Id.* These equitable factors "call upon a court to exercise

its equitable discretion, and indeed the court may bar such a defense if the equities call for

such a limitation." *Brown*, 768 A.2d at 89.

As an initial matter, it is unlikely that the Letter Agreement violates MRPC 1.5(e) at all. The first element of this rule is disjunctive, providing that a fee sharing agreement is only valid if "the division is in proportion to the services performed by each lawyer **or** each lawyer assumes joint responsibility for the representation." MRPC 1.5(e)(1) (emphasis added). Accordingly, a fee splitting agreement may satisfy Rule 1.5(e) if the attorneys assume joint responsibility for the representation—even if the fee allocation does not correspond to the legal services that each lawyer performed.

It appears that Beasley Allen and McDonald assumed joint responsibility for this action. Under the MRPC, joint responsibility entails "financial and ethical responsibility for the representation as if the lawyers were associated in a partnership." MRPC 1.5(e) cmt. 7. There is no question that Beasley Allen and McDonald shared financial responsibility for this case, as they divided litigation expenses evenly between them. (Letter Ag't 1–2.) Although the Court of Appeals of Maryland has not defined "ethical responsibility," other courts have reasoned that a firm assumes ethical responsibility when it maintains active involvement in the representation and makes reasonable efforts to fulfill the ethical obligations of an attorney. *See, e.g.*, *Scott R. Larson, P.C. v. Grinnan*, 488 P.3d 202, 214–15 (Colo. App. 2017).[9] Comparatively, attorneys that "assume[] little to no responsibility for ensuring the continued effective representation of the [client]" do not share ethical responsibility. *Trice v. Toyota Motor Corp.*, No. CV 10-2804 ADM/DTS, 2018 WL 3141848, at *3 (D. Minn. June 27, 2018), *aff'd*

---

[9] At least one state has articulated this requirement in detail. Under the Texas Rules of Professional Conduct, "[t]he ethical responsibility assumed requires that a referring or associating lawyer make reasonable efforts to assure adequacy of representation and to provide adeaucte client communication." Tex. Discip. R. Prof. Conduct 1.04, Comment 13.

*sub nom. Padden Law Firm, PLLC v. Toyota Motor Corp.*, 956 F.3d 1069 (8th Cir. 2020).[10] In this case, McDonald was a participant, not a broker. Among other activities, the firm drafted the Complaint and oppositions to Defendants' motions to dismiss, appeared at hearings, argued motions to compel, and participated in discovery. (McDonald Resp. Opp. 10, 15.) McDonald's continued involvement at critical inflection points in the litigation is likely sufficient to bear ethical responsibility for the representation.

Even if the Letter Agreement violates Rule 1.5(e), the equities favor enforcement. The first three factors articulated in *Post* include "the nature of the alleged violation," "how the violation came about," and "the extent to which the parties acted in good faith." 707 A.2d at 819. As Judge Smalkin observed, the Letter Agreement is a valid, enforceable contract that was signed by equally sophisticated parties. *Cf. id.* ("Parties have the right to make their contracts in what form they please, provided they consist with the law of the land; and it is the duty of the Courts so to construe them, if possible, as to maintain them in their integrity and entirety." (quoting *Md. Fertilizing & Manu. Co. v. Newman*, 60 Md. 584, 588 (1883))). Although the agreed fee allocation does not align with the work that each firm ultimately contributed to the case, that disparity is not the result of bad faith or inequitable conduct. To the contrary, the parties made a good-faith attempt to forecast the relative contributions of the four firms at the outset of this litigation. (R&R 11.) None of the firms or attorneys involved in this case

---

[10] In *Padden Law*, for example, the plaintiff firm primarily "participated with regard to publicity and by initially securing the clients." 956 F.3d at 1075. However, it "only 'nominally participated in the pre-trial litigation motion practice or strategy, did not participate in preparing the case for trial, did not participate in or attend the trial, did not contact the Plaintiffs during trial, did not participate in the post-trial and appellate stages of the cases, . . . and did not contribute to the financing of [the] case.'" *Id.* at 1072. In light of this negligible involvement, district court found, and the Eighth Circuit affirmed, that the plaintiff firm did not bear ethical responsibility for the action. *Id.*

were deceived, none of the signatories executed the agreement under duress or compulsion, and none of the attorneys attempted to evade their obligations to the case or disregard their duty to their clients. (*Id.* at 3.)

Compounding this consideration, Beasley Allen is responsible for the disparity it now protests. The fourth *Post* factor examines "whether the lawyer raising the defense is at least equally culpable as the lawyer against whom the defense is raised and whether the defense is being raised simply to escape an otherwise valid contractual obligation." 707 A.2d at 819. Early in this litigation, this Court designated Miles and Walker, then representing Beasley Allen and Finley, to serve as Interim Class Counsel for the plaintiff class. (*See* Lead Counsel Ord. 1–2.) Among other responsibilities, Interim Class Counsel were instructed to "make appropriate work assignments to Plaintiffs' counsel," to "encourage cooperation and efficiency among all Plaintiffs' counsel," to "call meetings of Plaintiffs' counsel," and to "monitor the activities of all Plaintiffs' counsel." (*Id.* at 2–3.) Accordingly, Beasley Allen was responsible for the allocation, management, and coordination of responsibilities among the four plaintiffs' firms in this case. To the extent that Beasley Allen now contends that those duties were divided unfairly, and that it shouldered more work than it bargained for, Beasley Allen had the power and the opportunity to correct this problem.[11]

---

[11] Throughout its Objection, Beasley Allen suggests that it was unsatisfied with the division of labor between Plaintiffs' counsel. For example, Beasley Allen contends that it "discussed dividing deposition responsibilities with Walker and [McDonald]," and that "a [McDonald] lawyer stated he thought it best that Beasley Allen and Walker handle the depositions because [McDonald] lacked experience in depositions in complex matters such as *Banner* and did not want to potentially harm the case." (Beasley Allen Obj. 8 (citing Miles Decl. ¶ 14).) Beasley Allen also claims that, in a phone call during April 2019, Miles informed McDonald that the Letter Agreement "would need to be re-negotiated in light of the disparity between fee percentages in the [Letter] Agreement and the services performed in the Consolidated Actions." (*Id.* at 14 n.6; Miles Decl. ¶ 192.) These allegations are insubstantial. Even assuming these conversations took place in the manner described by Beasley Allen,

The resolution of this issue has no impact on the interests of the class, and will not cut against the plaintiffs' recovery in any manner. The fifth and six *Post* factors address whether there is a "public interest in not enforcing the agreement," with a focus on "whether the client, in particular, would be harmed by enforcing the agreement." 707 A.2d at 169–70. Neither is implicated here. This Court has already approved an award of $7,851,011.68 in attorneys' fees and $1,023,172.20 in litigation expenses. (Final Approval Ord. ¶ 15.) The total amount of this fee award is fixed and uncontested—the only question before this Court is its allocation. That allocation will not affect the plaintiff class in any significant respect; the class members' share of the $40 million settlement will remain unchanged regardless of how fees are divided and shared among their attorneys.

The seventh *Post* factor is an open-ended invitation to evaluate "any other relevant considerations." 707 A.2d at 170. Throughout Beasley Allen's memoranda, the firm argues that this Court granted it the authority to "allocate [attorneys'] fees among Plaintiffs' counsel." (*See, e.g.*, Lead Counsel Ord. 4.) Beasley Allen contends that this authority overrides the Special Master's recommendations and the Letter Agreement. (*See, e.g.*, Beasley Allen Obj. 20–21; Beasley Allen Repl. Supp. 9–11.) Beasley also notes that courts accord "substantial deference" to lead counsel's judgment in determining a proper fee award, as lead counsel is in a "unique position to weigh [counsels' respective] contributions to the litigation." *In re Copley Pharm., Inc., Albuterol Prods. Liab. Litig.*, 50 F. Supp. 2d 1141, 1149 (D. Wyo. 1999); *see, e.g., Wells v. Dartmouth*

---

it does not appear that McDonald refused to perform any of the work that it was ultimately assigned, or that any attorney or firm attempted to renegotiate the Letter Agreement prior to the instant dispute. As the Special Master aptly observed, "[d]iscussions are discussions; they disappear into the ether. Agreements do not." (R&R 3.)

*Bancorp, Inc.*, 813 F. Supp. 126, 132 (D. Wy. 1999); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1212–13 (D.N.M. 1998); *In re Indigo Sec. Litig.*, 995 F. Supp. 233, 235 (D. Mass. 1998). However, the record reflects that Beasley Allen requested the appointment of the Special Master to resolve this dispute and determine the proper allocation of attorneys' fees. (*See* Mot. to Appoint Special Master 1–3.) Accordingly, Beasley cannot claim that the Special Master's recommendations derogate from its authority as Lead Counsel, or that the process it proposed is inequitable, merely because it disagrees with the result.

Finally, Beasley Allen argues that the Letter Agreement "does not reference or contemplate *Penn*," which was filed one year after *Banner* and consolidated under *Banner* for the purpose of settlement only. (Beasley Allen Obj. 17.) Judge Smalkin found that *Penn* was within the contemplation of the Letter Agreement, as "Penn was connected with the original defendant" and did not enter the case "simply . . . out of the blue." (R&R 15.) This finding is not clearly erroneous. As Penn and Banner were each subsidiaries of Legal & General America, Inc., they were within "the same family of companies" and subject to identical legal claims. (McDonald Resp. Opp. 18.) Initial drafts of the Banner Complaint named Penn as a second defendant, indicating that the parties may have considered both lawsuits a function of a single dispute. (*Id.*; *see also* Email Evidence 11–12, ECF No. 380-23 (attaching early draft complaint).) And although the claims against Penn were ultimately filed separately, Beasley and McDonald collaborated in both cases and split costs for each. (McDonald Resp. Opp. 18–19 (citing Email Evidence 15–17).) In light of the close legal and factual relationship between these actions, the

Special Master did not clearly err by concluding that *Penn* is within the contemplation of the original Letter Agreement.[12]

As the Court of Appeals of Maryland observed in *Post*, "[a]ttorneys should be permitted to agree in advance what division of fees there will be, so long as they make a good faith attempt at the time of agreement to anticipate the proportions of services to be performed and responsibilities to be assumed, and otherwise comply with [the applicable rule]." *Cf.* 707 A.2d at 170 (quoting *Breckler v. Thaler*, 87 Cal. App. 3d 189, 196 (1978)) (alteration in original). For the reasons discussed above, the balance of the equitable *Post* factors favors enforcement. The Letter Agreement is the result of evenhanded bargaining between sophisticated parties—it is not the product of gamesmanship, manipulation, or bad faith conduct. The corresponding fee allocation is the result of a good-faith attempt to forecast the firms' relative contributions, and the disparity at issue is at least partially attributable to Lead Counsel, who had an express responsibility to allocate work among the four firms assigned to this litigation. Accordingly, this Court hereby **DENIES** the pending objections and alternative fee allocation proposal (ECF Nos. 376, 406), and **GRANTS** the pending motions to adopt the Special Master's

---

[12] *Penn* may present a separate Rule 1.5(e) concern, as Beasley Allen alleges that "class representative Rich did not sign acknowledging consent of the [Letter] Agreement." (Beasley Allen Obj. 6 (citing Letter Ag't Signatory Page, ECF Nos. 354-2, 354-3).) *Cf.* MRPC 1.5(e)(2) (providing that the client must agree to a fee split agreement, and that such agreement must be confirmed in writing). However, while *Penn* accounted for approximately one-third of the total settlement, it did not reflect one-third of the work expended by the attorneys, as the record reflects that Beasley Allen billed a mere 3% of its hours to *Penn*. (Beasley Allen Obj. 10 (referencing only 170 hours of work on *Penn*) (citing Beasley Allen *Penn* Hours, ECF No. 376-7).) Accordingly, to the extent that fees are to be divided in proportion to the work of the attorneys, MRPC 1.5(e)(1), *Penn* has minimal effect on the proper allocation of the award in this case. More holistically, given the similarities in the legal theories, the minimal time expended by the attorneys to achieve a favorable result in *Penn*, and the overarching objectives of consolidation, the *Post* factors indicate that any defect in failing to obtain Rich's consent is insubstantial.

Report and Recommendations (ECF Nos. 377, 379). Pursuant to those recommendations, this Court shall allocate attorneys' fees in accordance with the parties' Letter Agreement following any individual distribution to Walker and the Boles firm.

## II.     Walker's Requested Modifications

Walker seeks four modifications to the Special Master's Report and Recommendations that would adjust the mechanism for holding and distributing funds in this case. (Walker Mot. Modify ¶¶ 15–18.) Pursuant to Rule 53(f) of the Federal Rules of Civil Procedure, a party move to adopt, modify, or object to the special master's recommendations, Fed. R. Civ. P. 53(f)(2), and the court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions," Fed. R. Civ. P. 53(f)(1). Walker proposes the addition of the following language to any order adopting the Special Master's recommendations:

1. Upon receipt of any funds, Beasley-Allen is to place such funds into escrow consistent with this Court's prior Order dated May 29, 2020 (ECF No. 366).

2. No distribution of all or any portion of the Fee Award will occur unless and until such funds are received from the Defendants and placed into escrow by Beasley-Allen in accordance with the applicable deadlines as set forth in the court-approved Settlement Agreement and Release.

3. [T]he Court [shall] direct Mr. Walker and the Boles Firm each to file simultaneously to the Court documents [accounting for work done after Mr. Walker's resignation from Finley] within 30 days of the Final Settlement Date as defined in [the] court-approved Settlement Agreement and Release.[13]

4. Any directive herein to Beasley-Allen to release from escrow any portion of the Fee Award to the Finley Firm in no way precludes or inhibits the right [of] Miles and/or Beasley-Allen to interplead such funds in, or otherwise obey any order of, a court of competent jurisdiction.

---

[13] This request would modify the present language, which directs Walker and Boles to file such documents within 30 days of the adoption of the Report and Recommendations. (R&R 16.)

(Walker Mot. Modify ¶¶ 15–18.) The Finley Firm consents to the first three requests, which provide procedural safeguards for the distribution of the funds at issue in this case. (*See* Finley Resp. Opp. 3 n.2 ("[T]he Finley Firm does not object to the modifications Mr. Walker proposes in paragraphs 15-17 of his paper."). However, as the Final Settlement Date has now passed, the third proposed alteration is no longer practical. (*See* Settlement Ag't ¶ 54 (defining "Final Settlement Date," as relevant, as the date on which all appeals have been resolved and the time for further appeal has expired).) Accordingly, this Court grants Walker's motion as to the first and second requests but denies that motion as to the third.

The fourth proposed modification arises from an internecine payment dispute between Walker and Finley. As noted above, this Court appointed George W. "Wally" Walker to serve as Interim Class Counsel alongside W. Daniel "Dee" Miles of Beasley Allen. (*See* Lead Counsel Ord. 3.) However, Walker departed the Finley Firm on November 30, 2019, and joined the Boles firm on December 2, 2019. As he remained Interim Class Counsel in this case, Walker continued to fulfill his responsibilities until the Settlement was finalized on May 20, 2020. (Beasley Allen Obj. 5; Miles Decl. ¶ 25.) Accordingly, the majority of Walker's work on this case is attributable to the Finley Firm, which is a party to the Letter Agreement, while the remainder is attributable to Boles, which is not. The parties do not dispute that Walker should be paid for the work he completed for Boles. However, Walker also claims that he "has never been paid a dime for his work in the case," and that he intends to pursue further litigation against Finley. (Walker Repl. Supp. 6; Walker Decl. 18, ECF No. 378-1.)

The Special Master made two recommendations with respect to this dispute. First, the Special Master recommends that Walker be paid directly from the general fee fund for any

work he completed on this case between the time he left Finley and the Final Fairness Hearing. (R&R 16.) To facilitate this distribution, the Special Master recommends that this Court direct Walker and Boles to file documents accounting for any work that he completed following his resignation from the Finley Firm on November 30, 2019. (*Id.*) These monies will be subtracted from the general fee fund and given to Boles before the remainder is allocated in accordance with the Letter Agreement. (*Id.*) Second, the Special Master found that Walker is not an interested party to the fee split mandated by the Letter Agreement, as he signed that contract on behalf of the Finley Firm. (*Id.* at 14.) As "Walker is not entitled to seek a percentage of the $7,851,001.08 [award] directly to himself," the Special Master suggests that "the appropriate solution for . . . Walker is to file a separate claim for common law or equity relief in an appropriate court." (*Id.*) Consequently, the Special Master recommends that this Court deny relief to Walker without prejudice to his right to settle any outstanding disputes with Finley in another forum. (*Id.* at 16.)

Beyond his concurrence in the objections filed by Beasley Allen, Walker does not challenge either of these recommendations. (*See* Walker Mot. Modify 5 ("Unless overturned on the grounds raised by Miles and Beasley-Allen, Walker is content with the Special Master's Recommendation . . . subject only to certain [modifications]." (emphasis omitted)).) Instead, Walker seeks to introduce language clarifying that this Court's directive to release funds to Finley does not impair the parties' rights to "interplead such funds in, or otherwise obey any order of, a court of competent jurisdiction." (*Id.* at 8.) Walker contends that this proposed language is necessary and appropriate to operationalize the Special Master's proposed solution to his dispute with Finley, as it would preserve his right "to later pursue and recover his fair

24

share of the Fee Award for work he did in this case while previously affiliated with the Finley Firm." (*Id.* at 9.)

The Finley Firm launches a barrage of objections against this modification, arguing that this Court should not preemptively authorize Walker to encumber Finley's allocation. From his pleadings, it appears that Walker intends to "petition to safeguard the funds whether in the context of an interpleader action or other procedural vehicle," such as an injunction or an attachment before judgment. (Walker Repl. Supp. 11–12.) Accordingly, Finley contends that Walker lacks standing to encumber its allocation, as Walker has no "legally protected interest" in Finley's fee share under the Letter Agreement, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), that he is a W2 employee "who has no cognizable interest, either in law or equity, in the property of his [employer]," *cf. Strobos v. RxBio, Inc.*, 221 F. Supp. 3d 21, 25 (D.D.C. 2016) (cleaned up), and that he will not suffer "irreparable harm," as his concerns about dissipation are meritless, *cf. Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Accordingly, Finley asks this Court to declare "that The Finley Firm's portion of the fee award shall not be encumbered in any fashion by Mr. Walker, the Boles firm, Beasley Allen, or any law firm or attorney involved in this dispute." (Finley Resp. Opp. 7.)

Finley's argument, and its proposed language, puts the cart before the horse.[14] Walker is not asking this Court to preemptively encumber Finley's funds, or even to declare that

---

[14] Notably, Finley's suggestion calls on this Court to preemptively decide the viability of any future dispute between Walker and Finley—precisely the objection that Finley levels against Walker. Walker seeks merely to ensure that this Court's order is not granted unwarranted preclusive effect, while Finley's proposed alteration would preemptively limit Walker's ability to pursue further relief. This Court declines to depart from the recommendations of the Special Master in this manner. (*Cf.* R&R 16 (recommending that this Court deny the relief sought by Walker "without prejudice for [his ability] to settle [his] own disputes via common law or equity litigation in an appropriate venue.").

Walker has a legal basis to do so. To the contrary, Walker requests language clarifying that this Court's order should not be interpreted as *precluding* that right. This is perfectly in line with the Special Master's recommendation that fees be distributed "without prejudice for [Walker and Finley] to settle their own disputes via common law or equity litigation in an appropriate venue." (R&R 16.) Although Walker has no basis to seek an individual allocation under the Letter Agreement, whether he has a claim against Finley is another matter. This Court takes no position on whether Walker has standing to sue Finley or encumber Finley's fee award, and expresses no opinion as to whether Finley properly remunerated him for his services. Those are matters properly reserved for litigation between Walker and Finley—an independent dispute to be resolved in another forum at the appropriate time. Accordingly, Walker's Motion to Modify the Report and Recommendations of Special Master (ECF No. 378) is hereby **GRANTED** as it relates to the first, second, and fourth proposed modification, and **DENIED** as to the third requested modification only.

## CONCLUSION

For the foregoing reasons, the pending Motions to Adopt the Special Master's Report and Recommendations (ECF Nos. 377, 379) are hereby **GRANTED;** the pending Objection to the Special Master's Report and Recommendation (ECF No. 376) is consequently **DENIED;** and the corresponding Notice of Allocation (ECF No. 406) is likewise **DENIED.** The pending Motion to Modify the Special Master's Report and Recommendation (ECF No. 378) is hereby **GRANTED** in part and **DENIED** in part.

In accordance with the above dispositions, the Report and Recommendations issued by the Special Master, the Honorable Frederic M. Smalkin (ECF No. 375), are hereby

26

**ADOPTED**, subject to the modifications approved herein. This Court shall first direct Walker and Boles to submit materials within thirty days documenting the work Walker completed on this case after his departure from the Finley Firm. Pending any objections from the parties, this Court shall distribute that the corresponding fees to the Boles firm from the general fund. Thereafter, this Court shall allocate the remainder in accordance with the Letter Agreement dated January 19, 2016.

A separate order follows.


Dated: March 9, 2023


_____/s/_____
Richard D. Bennett
United States Senior District Judge